IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| William Fuller, <br><br> Plaintiff, <br><br> v. <br><br> Abbott Laboratories; United States Food and Drug Administration <br><br> Defendants. | Case No. 1:25-cv-12714 <br><br> Judge:     Hon. Mary M. Rowland |

**DEFENDANT ABBOTT LABORATORIES' RULE 12(B)(6) MOTION TO DISMISS
PLAINTIFF'S COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

I.      The PMA Process ............................................................................................................ 2

II.     Plaintiff's Allegations ..................................................................................................... 5

LEGAL STANDARD.................................................................................................................. 6

ARGUMENT ............................................................................................................................... 7

I.      Plaintiff's Claims Are Preempted by Federal Law .......................................................... 7

      A.      Plaintiff's Claims Are Expressly Preempted .......................................................... 7

      B.      Plaintiff's Claims Are Impliedly Preempted........................................................... 9

      C.      Plaintiff's PMA Supplement Theory Does Not Change the Preemption
            Analysis and Has Been Rejected by Courts........................................................... 10

      D.      Plaintiff's Conclusory Assertions of Federal Law Violations Are
            Insufficient to State Parallel Claims That Escape Preemption ........................... 11

II.     Plaintiff Has Not Pleaded Any Viable Claims—Parallel or Otherwise.......................... 13

      A.      New York Law, Not Illinois or Florida Law, Applies to These Claims.............. 13

      B.      Plaintiff's Claims Fail on State-Law Grounds and Are Inadequately
            Pleaded................................................................................................................ 14

CONCLUSION............................................................................................................................ 19

i

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 6, 14

*Bass v. Stryker Corp.*,
  669 F.3d 501 (5th Cir. 2012) ............................................................................... 10, 15

*Bausch v. Stryker Corp.*,
  630 F.3d 546 (7th Cir. 2010) ............................................................................. 7, 9, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 6

*Bertini v. Smith & Nephew, Inc.*,
  8 F. Supp. 3d 246 (E.D.N.Y. 2014) ........................................................................... 10

*Brooks v. Mentor Worldwide LLC*,
  985 F.3d 1272 (10th Cir. 2021) ................................................................................. 10

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ............................................................................................ 3, 9, 11

*Clark v. Medtronic, Inc.*,
  572 F. Supp. 2d 1090 (D. Minn. 2008) ..................................................................... 15

*Cline v. Advanced Neuromodulation Sys., Inc.*,
  914 F. Supp. 2d 1290 (N.D. Ga. 2012) ....................................................................... 2

*Coene v. 3M Co. ex rel. Minnesota Min. & Mfg. Co.*,
  2015 WL 5773578 (W.D.N.Y. Sept. 30, 2015) ........................................................ 16

*Conley v. St. Jude Med., LLC*,
  482 F. Supp. 3d 268 (M.D. Pa. 2020) ......................................................................... 1

*Dunham v. Bos. Sci. Corp.*,
  2026 WL 539533 (W.D. Mich. Feb. 24, 2026) ..................................................... 1, 12

*Dunham v. Covidien LP*,
  2019 WL 2461806 (S.D.N.Y. May 22, 2019) ........................................................... 17

*Dunham v. Covidien, LP ("Dunham II")*,
  498 F. Supp. 3d 549 (S.D.N.Y. 2020) ............................................... 15, 16, 17, 18

*Dupere v. Ethicon, Inc.*,
  2022 WL 523604 (S.D.N.Y. Feb. 22, 2022) ............................................................. 19

*English v. Bayer Corp.*,
  468 F. Supp. 3d 573 (W.D.N.Y. 2020) ................................................................ 16, 18

*Fisher v. APP Pharms., LLC*,
  783 F. Supp. 2d 424 (S.D.N.Y. 2011) ....................................................................... 17

*Forsythe v. Rosen Med. Grp.*,
  2014 WL 13117499 (N.D. Ill. June 19, 2014) .......................................................... 13

*Glover v. Bob's Disc. Furniture, LLC*,
 621 F. Supp. 3d 442 (S.D.N.Y. 2022) ................................................................. 19

*Goldin v. Smith & Nephew, Inc.*,
 2013 WL 1759575 (S.D.N.Y. Apr. 24, 2013) ................................................. 14, 17

*Gravitt v. Mentor Worldwide, LLC*,
 2018 WL 2933609 (N.D. Ill. June 12, 2018) ...................................................... 9, 12

*Gravitt v. Mentor Worldwide, LLC*,
 289 F. Supp. 3d 877 (N.D. Ill. 2018) ................................................................. 7

*Green v. Covidien LP*,
 2019 WL 4142480 (S.D.N.Y. Aug. 30, 2019) ...................................................... 14

*Green v. Nevro Corp.*,
 2025 WL 369682 (M.D. La. Jan. 31, 2025) ......................................................... 1

*Guinn v. St. Jude Med., LLC*,
 2020 WL 12442365 (D. Del. Dec. 30, 2020) ...................................................... 2

*Gunn v. Cont'l Cas. Co.*,
 968 F.3d 802 (7th Cir. 2020) ............................................................................. 13

*Heisner v. Genzyme Corp.*,
 2010 WL 894054 (N.D. Ill. Mar. 8, 2010) .......................................................... 12

*Holland v. Abbott Labs.*,
 626 F. Supp. 3d 1256 (M.D. Fla. 2022) .............................................................. 1

*In re GE/CBPS Data Breach Litig.*,
 2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021) ...................................................... 16, 19

*Kemp v. Medtronic, Inc.*,
 231 F.3d 216 (6th Cir. 2000) ............................................................................. 10

*Kennedy v. Covidien, LP*,
 2019 WL 1429979 (S.D.N.Y. Mar. 29, 2019) ...................................................... 18

*Krantz v. Abbott Labs.*,
 2025 WL 2160718 (N.D. Ill. July 30, 2025) ...................................................... 13

*Krulewich v. Covidien, LP*,
 498 F. Supp. 3d 566 (S.D.N.Y. 2020) ................................................................ 18

*Loper Bright Enters. v. Raimondo*,
 603 U.S. 369 (2024) ......................................................................................... 11

*Luckey v. Abbott Labs., Inc.*,
 2026 WL 836122 (E.D. Ky. Mar. 26, 2026) ...................................................... 11

*McMullen v. Medtronic, Inc.*,
 421 F.3d 482 (7th Cir. 2005) ...................................................................... 8, 12, 13

*Murray v. Xerox Corp.*,
 811 F.2d 118 (2d Cir. 1987) ............................................................................. 18

*Oden v. Bos. Sci. Corp.*,
   330 F. Supp. 3d 877 (E.D.N.Y. 2018) ................................................................. 16, 19

*Reed v. Pfizer, Inc.*,
   839 F. Supp. 2d 571 (E.D.N.Y. 2012) ................................................................. 15, 17

*Riegel v. Medtronic, Inc.*,
   552 U.S. 312 (2008).................................................................................................. passim

*Rodman v. Stryker Sales Corp.*,
   2014 WL 5002095 (S.D.N.Y. Oct. 7, 2014), *aff'd*, 604 F. App'x 81 (2d Cir. 2015) ............... 15

*Scianneaux v. St. Jude Med. S.C., Inc.*,
   961 F. Supp. 2d 808 (E.D. La. 2013)..................................................................... 15

*Scism v. Ethicon, Inc.*,
   2020 WL 1245349 (N.D.N.Y. Mar. 16, 2020) ........................................................ 18

*Tillet v. CooperSurgical, Inc.*,
   2023 WL 4704091 (W.D.N.Y. July 24, 2023) ........................................................ 16

*Townsend v. Sears, Roebuck & Co.*,
   227 Ill. 2d 147 (2007) ........................................................................................... 13

*Vincent v. Medtronic, Inc.*,
   221 F. Supp. 3d 1005 (N.D. Ill. 2016) ...................................................... 8, 9, 10, 11

*Virnich v. Vorwald*,
   664 F.3d 206 (7th Cir. 2011), *as amended* (Jan. 3, 2012) ........................................ 6

*Walker v. Medtronic, Inc.*,
   670 F.3d 569 (4th Cir. 2012) ........................................................................... 10, 15

*Wilson v. CooperSurgical, Inc.*,
   799 F. Supp. 3d 765 (S.D. Ill. 2025).......................................................................... 9

*Wolicki-Gables v. Arrow Intern., Inc.*,
   634 F.3d 1296 (11th Cir. 2011) ............................................................................... 12

*Yusnukis v. Nevro Corp.*,
   2026 WL 509227 (D.N.M. Feb. 24, 2026) .................................................................. 1

**Statutes**

21 U.S.C. § 337(a) ................................................................................................... 3, 11

21 U.S.C. § 360c(a)(1)(C)(ii).......................................................................................... 3

21 U.S.C. § 360e...................................................................................................... 11

21 U.S.C. § 360e(c)(1).................................................................................................... 3

21 U.S.C. § 360e(c)-(d)................................................................................................... 9

21 U.S.C. § 360e(d) ........................................................................................................ 3

21 U.S.C. § 360e(d)(1)(A) ........................................................................................ 3, 8

21 U.S.C. § 360e(d)(5)................................................................................................... 4

21 U.S.C. § 360e(d)(5)(A)(i) ................................................................................ 2, 11

21 U.S.C. § 360e(d)(6) .......................................................................................... 4

21 U.S.C. § 360k(a) ............................................................................................... 7

21 U.S.C. § 360k(a)(1) ........................................................................................... 2

21 U.S.C. § 379i(4)(B) ........................................................................................... 4

21 U.S.C. § 379i(4)(C) ........................................................................................... 4

21 U.S.C. § 379i(4)(D) ........................................................................................... 5

**Regulations**

21 C.F.R. § 814.39 ................................................................................................. 4

21 C.F.R. § 814.39(a) ........................................................................................... 13

21 C.F.R. § 814.39(c)(1) ........................................................................................ 4

21 C.F.R. § 814.39(d) .......................................................................................... 15

21 C.F.R. § 820.198 ............................................................................................. 15

U.S. Food & Drug Admin., *Premarket Approval of Medical Devices*, 51 Fed. Reg. 26,342 (July 22, 1986) ........................................................................................................... 4

**INTRODUCTION**

To help patients manage chronic pain, Abbott manufactures implantable spinal cord stimulators ("SCS") under the rigorous oversight of the Food and Drug Administration. As with other stringently regulated medical devices, Abbott was required to submit its SCS to the FDA for premarket approval ("PMA"). Abbott's PMA application was granted only after a lengthy FDA review found Abbott's device met FDA's standard for PMA approvals—namely, that Abbott showed a "reasonable assurance" of the SCS device's "safety and effectiveness." Consistent with requirements under federal law, every time that Abbott has made changes to its SCS models affecting safety or efficacy, it has submitted a PMA supplement to the FDA for approval. The FDA assesses a PMA supplement as if evaluating a new device—it considers the original PMA, any subsequently approved PMA supplements, and the new PMA supplement.

In the face of Abbott's compliance with this federal regime, Plaintiff brings state-law personal-injury and product-liability claims that seek to usurp the FDA's regulatory powers, imposing requirements different from or in addition to federal requirements applicable to the device. Plaintiff's claims, accordingly, fall within the long line of cases holding that state-law claims imposing different requirements on devices subject to PMA, or infringing on the federal government's enforcement authority, are preempted in order to maintain a unified federal regime of medical device regulation. *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008).[1] Indeed, district courts around the country have found similar claims against Abbott—including claims involving spinal cord stimulators like the device at issue here—are preempted.[2]

_____

[1] *See also, e.g.*, *Dunham v. Bos. Sci. Corp.*, 2026 WL 539533 (W.D. Mich. Feb. 24, 2026) (dismissing similar allegations); *Yusnukis v. Nevro Corp.*, 2026 WL 509227 (D.N.M. Feb. 24, 2026) (same); *Green v. Nevro Corp.*, 2025 WL 369682 (M.D. La. Jan. 31, 2025) (same).

[2] *See, e.g.*, *Holland v. Abbott Labs.*, 626 F. Supp. 3d 1256 (M.D. Fla. 2022) (motion to dismiss granted); *Conley v. St. Jude Med., LLC*, 482 F. Supp. 3d 268 (M.D. Pa. 2020) (same); *Guinn v. St. Jude Med., LLC*,

1

Recognizing these barriers, Plaintiff tries to avoid preemption by levying a specious Administrative Procedure Act ("APA") claim against the FDA, alleging that Abbott should have been required to submit a new PMA application each time it made changes to a device, rather than seek the supplemental PMA approval it received. That strategy fails for several reasons. First, no such requirement exists under the law. In fact, the opposite is true: Federal law requires Abbott to submit a supplemental application "for any change to a device subject to [PMA] that affects safety or effectiveness." 21 U.S.C. § 360e(d)(5)(A)(i). Second, Plaintiff ignores that the FDA subjects supplemental applications to substantially the same review as an original PMA. Plaintiff may not like the PMA supplement regime that Congress and the FDA have established, but his attempts to alter it through litigation rather than the rulemaking and legislative processes fall flat.

Even if they could survive preemption, Plaintiff's claims are still fatally defective. Resting on conclusory allegations devoid of factual support, they fail to satisfy the pleading standards of Rules 8 and 9 and allege theories unsupported by state law.

For these reasons, the Court should dismiss this case in full.

## BACKGROUND

### I.      The PMA Process

In 1976, Congress enacted the Medical Device Amendments ("MDA"), 21 U.S.C. §§ 360c *et seq.*, to the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, imposing "a regime of detailed federal oversight" on medical devices. *Riegel*, 552 U.S. at 315-16. To secure federal control over these devices, the MDA expressly preempts any state-imposed requirement that is "different from, or in addition to," any federal requirement, and that "relates to the safety or effectiveness of the device." 21 U.S.C. § 360k(a)(1). The FDA has the authority to investigate

---

2020 WL 12442365 (D. Del. Dec. 30, 2020) (same); *Cline v. Advanced Neuromodulation Sys., Inc.*, 914 F. Supp. 2d 1290 (N.D. Ga. 2012) (dismissing claim based on violations of FDA regulations).

violations of the FDCA and its amendments, and "has at its disposal a variety of enforcement options that allow it to make a measured response" to any problems that it discovers. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349-50 (2001) (holding that the federal government is exclusively authorized to bring actions under the FDCA and to police "fraud-on-the-FDA"). The MDA is not enforceable by private litigants; any actions to enforce FDA requirements as to a PMA device "shall be by and in the name of the United States." 21 U.S.C. § 337(a).

FDA-regulated medical devices fall under three classes, from Class I (the lowest level of oversight) to Class III (the most stringent). *Riegel*, 552 U.S. at 316-17. Class III devices, like Abbott's SCS, are used to "support[] or sustain[] human life," "prevent[] impairment of human health," or "present[] a potential unreasonable risk of illness or injury" for which "it cannot be established that a less stringent classification would provide reasonable assurance of safety and effectiveness." *Id.* at 317 (quoting 21 U.S.C. § 360c(a)(1)(C)(ii)). For these devices, the MDA imposes a "rigorous" PMA regime that requires manufacturers to "submit what is typically a multivolume application," including reports of studies and investigations of the device's safety and effectiveness; a full statement of its components and properties; a full description of the methods, facilities, and controls used in manufacturing (including descriptions of their compliance with Current Good Manufacturing Practices ("CGMP") requirements, which are promulgated in the Quality System Regulation ("QSR")); samples of device components; and proposed labeling. *Riegel*, 552 U.S. at 317-18 (citing 21 U.S.C. § 360e(c)(1)). The FDA "spends an average of 1,200 hours reviewing each application," and grants PMA only after concluding there is "reasonable assurance" of the device's "safety and effectiveness." *Id.* at 318 (quoting 21 U.S.C. § 360e(d)). This process also encompasses the device's proposed labeling, which the FDA "must determine . . . is neither false nor misleading." *Id.* (citing 21 U.S.C. § 360e(d)(1)(A)).

3

After FDA grants PMA, the MDA **requires** manufacturers to seek supplemental PMA for changes to a device's design, manufacturing processes, labeling, or other attributes that affect safety or effectiveness. *Id.* at 319 (citing 21 U.S.C. § 360e(d)(6) [now found in (d)(5)]; 21 C.F.R. § 814.39). Supplemental PMA applications are "evaluated under largely the same criteria as an initial application," *id.*, except that, for supplemental applications, "the information required. . .is limited to that needed to support the change." 21 C.F.R. § 814.39(c)(1). "[W]hen an applicant submits a PMA supplement for a change in an approved device, the applicant has, in effect, submitted a new PMA for the 'new' (changed) device." U.S. Food & Drug Admin., *Premarket Approval of Medical Devices*, 51 Fed. Reg. 26,342, 26,354 (July 22, 1986).

The MDA provides for different types of supplemental PMA submissions, depending on "the nature of the data, if any, that is needed to demonstrate the safety and effectiveness of the modified device." Request for Judicial Notice ("RJN"), Ex. 1, at 8. Manufacturers submit a "panel-track supplement" when there has been "a significant change in design or performance of the device, or a new indication for use of the device," and substantial clinical data are required to provide reasonable assurance of safety and effectiveness. *Id.* at 11 (quoting 21 U.S.C. § 379i(4)(B)). With a "panel-track supplement," manufacturers submit new clinical data and potentially some preclinical data. *Id.* at 28.[3] When a supplement "requests a significant change in components, materials, design, specification, software, color additives, or labeling," but new clinical data are generally not required to demonstrate a reasonable assurance of safety and effectiveness, manufacturers submit a "180-day supplement." *Id.* at 15-16 (quoting 21 U.S.C. § 379i(4)(C)). These supplements require manufacturers to submit preclinical and potentially

---

[3] Clinical data is "derived from a study using a patient population with a defined clinical condition to determine the safety and effectiveness of the device." It is "not limited to data obtained from an investigational device exemption (IDE) study and could include foreign data and literature." RJN, Ex. 1 at 9 n.4. Preclinical data "refers to non-clinical testing … used to characterize a device." *Id.* at 9 n.3.

4

limited confirmatory clinical data. *Id.* at 28. And when a supplement requests only a "minor change to the device, such as a minor change to the design of the device, software, sterilization, or labeling," a manufacturer may submit a "real-time supplement," in which the manufacturer requests and the FDA may arrange "a meeting or similar forum to jointly review and determine the status of the supplement." *Id.* at 18-19 (quoting 21 U.S.C. § 379i(4)(D)). This type of PMA supplement requires the submission of only preclinical data. *Id.* at 28.

## II. Plaintiff's Allegations

Plaintiff William Fuller, a Florida resident, was implanted in February 2022 with a Proclaim Elite spinal cord stimulator in New York. Compl. ¶¶ 1, 41-42. The Proclaim Elite is a Class III, PMA-approved device. Compl. ¶ 14; *see* RJN, Ex. 2. The Proclaim aids in the management of chronic pain in the lower body by delivering low-intensity electrical impulses to nerve structures. *See* RJN, Ex. 3 at 1. In 2001, the FDA granted PMA to Abbott's predecessor, Advanced Neuromodulation Systems, Inc. ("ANS"),[4] for the predicate of the Proclaim device at issue under PMA No. P010032, following the process just described. Compl. ¶ 14; *See* RJN, Ex. 5. Since then, Abbott has updated the SCS through a series of PMA supplements. *Id.* ¶¶ 15-16.

In October 2023, Plaintiff reported that his device no longer provided effective relief for his chronic pain. *Id.* ¶ 49. It was removed in January 2024, and Plaintiff alleges he "continues to suffer from pain and symptoms caused and exacerbated by the malfunctioning system." *Id.* ¶ 51.

Plaintiff contends that the PMA supplements changed the SCS, leaving him with a device "fundamentally different from" the one approved in the original PMA submission (No. P010032), and "with undisclosed risks and unvalidated functionality that ultimately failed and caused him"

---

[4] Plaintiff names Abbott Laboratories as the defendant, but the entity responsible for the design and manufacture of the SCS at issue is ANS, which performs those functions in Texas. ANS is a wholly owned subsidiary of St. Jude Medical, LLC, and Abbott Laboratories is the sole member of St. Jude Medical, LLC, but each of these entities is legally distinct.

5

harm. *Id.* ¶ 21. Each of the PMA supplements cited by Plaintiff and the accompanying labeling were approved by the FDA, however. *Id.* ¶ 16; *see also, e.g.*, RJN, Exs. 6-10.

Plaintiff's October 17, 2025, Complaint pleads ten state-law causes of action. He asserts claims for Strict Products Liability: Manufacturing Defect (Count I); Strict Products Liability: Failure to Warn (Count II); Negligence Per Se: Federal Regulatory Violations (Count III); Breach of Express Warranty (Count IV); Breach of Implied Warranty of Merchantability and Fitness for a Particular Purpose (Count V); Negligence (Count VI); Negligent Misrepresentation (Count VII); Fraudulent Concealment (Count VIII); Violation of New York Consumer Protection Act (Count IX); and Negligence Per Se: Unauthorized Practice of Medicine (Count X). Compl. ¶¶ 71-153. (At least some of those claims appear to be copied and pasted from another litigation, as the Complaint refers several times to Plaintiff and "*her* physician," *see* Compl. ¶¶ 110, 136, 141-42 (emphasis added).) Plaintiff also pleads an APA violation (Count XI), alleging the FDA violated its statutory duties by approving PMA supplements for changes in Abbott's devices, rather than requiring new PMA applications. Compl. ¶¶ 154-64.

## LEGAL STANDARD

A complaint should be dismissed when its allegations do not "state a claim to relief that is plausible on its face," meaning the factual allegations fail to "raise a right to relief above the speculative level." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011), *as amended* (Jan. 3, 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While preemption is an affirmative defense, it can be resolved on a motion to dismiss when "it is plain from the complaint that the defense is indeed a

6

bar to the suit." *Gravitt v. Mentor Worldwide, LLC*, 289 F. Supp. 3d 877, 884 (N.D. Ill. 2018).[5]

## ARGUMENT

### I. Plaintiff's Claims Are Preempted by Federal Law

Plaintiff alleges that Abbott's decision to pursue approvals for changes to its SCS through PMA supplements rather than a new PMA application resulted in a defective product about which he was insufficiently warned, and which consequently caused him injury. *See, e.g.*, Compl. ¶ 21. At base, Plaintiff seeks to use state law to hold Abbott liable for conduct that is either not required under federal law or that can only be regulated through the federal government's enforcement authority. Such claims are expressly preempted under Section 360(k) of the MDA or impliedly preempted under Supreme Court precedent.

#### A. Plaintiff's Claims Are Expressly Preempted

Section 360(k) of the MDA prohibits states from establishing "any requirement . . . which is different from, or in addition to, any requirement applicable . . . to the device" under federal law and that "relates to the safety or effectiveness of the device." 21 U.S.C. § 360k(a); *see Riegel*, 552 U.S. at 321-23. The Supreme Court has interpreted that prohibition to broadly preempt state-law claims challenging the safety or performance of a PMA device. *Id.* at 325. Congress enacted § 360k(a) with full knowledge that individuals allegedly injured by FDA-approved devices would be unable to rely on state tort laws for redress. In Congress's estimation, denying plaintiffs the ability to pursue those claims—the same claims at issue here—was outweighed by the benefits to the far greater number "who would suffer without new medical devices if juries were allowed to apply the tort law of 50 States to all innovations." *Id.* at 326.

---

[5] To the extent *Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir. 2010), suggests that preemption defenses should be raised in a Rule 12(c) motion, "[l]ittle rides . . . on the distinction" because the same standard governs both Rule 12(c) and Rule 12(b)(6) motions. *Gravitt*, 289 F. Supp. 3d at 884.

Under *Riegel*, state-law claims are expressly preempted where "(1) there are federal requirements applicable to the device in question (which may take the form of the specifications approved by the FDA during the premarket approval process), and (2) the common-law claims are based on state requirements that are different from, or in addition to, those requirements and relate to safety and effectiveness." *Vincent v. Medtronic, Inc.*, 221 F. Supp. 3d 1005, 1009 (N.D. Ill. 2016) (citing *Riegel*, 552 U.S. at 321-22).

There is no question that the first element is satisfied here. Under *Riegel*, "[p]remarket approval . . . imposes 'requirements' under the MDA." 552 U.S. at 322. Plaintiff acknowledges that the device at issue received PMA, *see* Compl. ¶ 14, and so federal requirements apply.

As to the second element, Plaintiff's claims seek to impose new and additional requirements that relate to the safety and effectiveness of the device. Indeed, Plaintiff alleges that Abbott failed to provide sufficient warnings about and misrepresented the alleged risks associated with the device and promised a level of safety and effectiveness that was inaccurate. *See* Compl. ¶¶ 79-87 (Count II); 88-97 (Count III); 98-106 (Count IV); 107-114 (Count V); 115-21 (Count VI); 122-30 (Count VII); 131-37 (Count VIII); 138-45 (Count IX). But the FDA reviews and approves the labeling and marketing materials for Class III devices and necessarily determines that they are not misleading or false, *Riegel*, 552 U.S. at 318; 21 U.S.C. §360e(d)(1)(A), so any claim that rests on misleading materials or insufficient warnings under state law would impose requirements beyond those imposed by the FDA. *See Vincent*, 221 F. Supp. 3d at 1010 (claims based on alleged failure to provide adequate warning of defective condition, risk of failure, and FDA-approval status preempted); *McMullen v. Medtronic, Inc.*, 421 F.3d 482, 488 (7th Cir. 2005) (claim of inadequate warning expressly preempted).

Similarly, the FDA approves the design and manufacturing processes of devices subject to

PMA, *Riegel*, 552 U.S. at 318; 21 U.S.C. § 360e(c)-(d), so Plaintiff's claims targeting alleged defects in the design or manufacturing of the device, *see* Compl. ¶¶ 71-78 (Count I); 88-97 (Count III); 107-114 (Count V); 115-21 (Count VI), also seek to impose requirements different from federal law. *See Vincent*, 221 F. Supp. 3d at 1010-11 (claims of defective design and manufacture preempted). He alleges, for example, that Abbott sold a device that "was not of merchantable quality" nor "fit for its intended purpose." Compl. ¶ 111. But the FDA already concluded otherwise, finding that there was "reasonable assurance" of the device's "safety and effectiveness," *Riegel*, 552 U.S. at 318, so holding Abbott liable would impose requirements beyond the FDA's.

### B.      Plaintiff's Claims Are Impliedly Preempted

In addition to being expressly preempted, Plaintiff's claims are impliedly preempted. The FDCA, as amended by the MDA, impliedly preempts claims attempting to enforce statutes and their implementing regulations where the claims "exist solely by virtue of the FDCA." *Buckman*, 531 U.S. at 353. A state-law claim exists solely by virtue of the FDCA where it asserts that the defendant is liable "*because* the conduct violates the [FDCA]." *Bausch*, 630 F.3d at 558. Plaintiff's claims match this description. Under the FDCA, those claims may only be brought by the federal government and should be dismissed. *Buckman*, 531 U.S. at 352; *Wilson v. CooperSurgical, Inc.*, 799 F. Supp. 3d 765, 778 (S.D. Ill. 2025).

Plaintiff alleges a negligence-per-se claim premised solely on alleged violations of federal PMA regulations. *See* Compl. ¶¶ 88-97 (Count III). Because "the existence of [the relevant] federal enactments is a critical element," the claim is "unconnected to any traditional state tort duty." *Gravitt v. Mentor Worldwide, LLC*, 2018 WL 2933609, at *7 (N.D. Ill. June 12, 2018) (quoting *Buckman*, 531 U.S. at 353). Indeed, the claim could not exist absent the federal regulations, Compl. ¶ 94, and therefore is impliedly preempted under *Buckman. See Gravitt*, 2018 WL 2933609, at *7 (claims alleging improper compliance with PMA regulations impliedly

9

preempted); *see also Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1279–80 (10th Cir. 2021) (negligence-per-se claim premised on violations of MDA impliedly preempted); *cf. Bausch*, 630 F.3d at 557-58 (implied preemption appropriate where "not claiming the breach of a recognized state-law duty").  The same is true of Plaintiff's other claims to the extent they seek to hold Abbott liable for failing to report adverse events or distributing a modified device without seeking a new PMA.  Those claims are based solely on Abbott's alleged noncompliance with the FDA's PMA requirements and supplemental PMA procedures.  *Vincent*, 221 F. Supp. 3d at 1011; *e.g.*, Compl. ¶¶ 103, 112, 117, 129, 133-34, 140.

### C. Plaintiff's PMA Supplement Theory Does Not Change the Preemption Analysis and Has Been Rejected by Courts

Plaintiff's theory that complying with the PMA supplement process (rather than Plaintiff's preferred process of entirely new PMA applications) was insufficient, *see, e.g.*, Compl. at 1-2; ¶¶ 20-22, 54-57, does not alter the analysis.  PMA supplement approvals have the same preemptive effect as PMA applications.  *See Riegel*, 552 U.S. at 320.  As *Riegel*—which involved a device approved via PMA supplements—explained, PMA supplements are "evaluated under largely the same criteria as an initial application," *id.* at 319, and so there is no reason to distinguish between supplements and initial applications for preemption purposes.  Courts recognized this even before *Riegel*.  *See, e.g.*, *Kemp v. Medtronic, Inc.*, 231 F.3d 216, 225-28 (6th Cir. 2000) (PMA supplement created federal requirements with preemptive effect); *accord Walker v. Medtronic, Inc.*, 670 F.3d 569, 573-74 (4th Cir. 2012) (PMA supplement evaluated under same criteria as initial application); *Bass v. Stryker Corp.*, 669 F.3d 501, 508 (5th Cir. 2012) (similar).  Since *Riegel*, courts have continued to do the same.  *See, e.g.*, *Vincent*, 221 F. Supp. 3d at 1010; *Bertini v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 246, 253, 260 (E.D.N.Y. 2014).  And for good reason: The MDA provides no basis for treating devices approved under PMA supplements differently than predicate

10

devices.  *See* 21 U.S.C. § 360e (establishing PMA application and PMA supplement requirements).

To the extent Plaintiff contends that Abbott concealed relevant information from the FDA by submitting supplemental rather than new PMA applications, *e.g.*, Compl. ¶¶ 20-22, such a claim amounts to "fraud on the FDA" and is impliedly preempted under *Buckman*.  *See* 531 U.S. at 353; *Vincent*, 221 F. Supp. 3d at 1010 (claim based on distributing modified device without complying with procedure for obtaining FDA approval of modification impliedly preempted); *Luckey v. Abbott Labs., Inc.*, 2026 WL 836122, at *5 (E.D. Ky. Mar. 26, 2026).  And to the extent he alleges that Abbott's submission of supplemental applications violated the MDA, that argument is belied by the text of the statute, which expressly provides for "supplemental application[s]" for changes that affect safety or effectiveness.  21 U.S.C. § 360e(d)(5)(A)(i).  Furthermore, even if Abbott's pursuit of supplemental applications rather than new applications violated the MDA (and it does not), that would be for the FDA to enforce, not a private litigant.  *See* 21 U.S.C. § 337(a); *Vincent*, 221 F. Supp. 3d at 1011 (claims based on non-compliance with FDA procedures impliedly preempted).[6]

### D. Plaintiff's Conclusory Assertions of Federal Law Violations Are Insufficient to State Parallel Claims That Escape Preemption

Plaintiff can avoid preemption only by pleading "parallel" claims—i.e., (1) "claims premised on a violation of FDA regulations" and (2) for which state law explicitly imposes an equivalent duty.  *Riegel*, 552 U.S. at 330; *Buckman*, 531 U.S. at 352-53.  Both parts of a parallel claim are required to survive preemption. Plaintiff's laundry list of federal regulations and

---

[6] Plaintiff also cannot avoid preemption by questioning the soundness of the congressionally established PMA supplement regime or by invoking *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).  *See* Compl. ¶¶ 22, 37, 154-64.  Among other flaws with this argument, Plaintiff points to no FDA interpretation of statutory language that he contends is wrong, and the statute itself mandates "supplemental application[s]," 21 U.S.C. § 360e(d)(5)(A)(i), so this Court would not be deferring to an FDA interpretation in finding these claims preempted.  *Contra Loper Bright*, 603 U.S. at 413.

conclusory allegations satisfies neither requirement. *See, e.g.*, Compl. ¶¶ 74, 117.

Plaintiff bases some claims in part—and one claim entirely—on alleged violations of federal regulations. *See* Compl. ¶¶ 74, 84, 88-97, 117-18, 133. But he offers no factual allegations to support these alleged violations; he instead baselessly asserts that the SCS "failed to conform" with regulations or that Abbott violated federal duties. *See, e.g.*, Compl. ¶¶ 74, 90. That is not enough. *See Wolicki-Gables v. Arrow Intern., Inc.*, 634 F.3d 1296, 1301 (11th Cir. 2011) ("Plaintiffs cannot simply incant the magic words '[Defendant] violated FDA regulations' in order to avoid preemption."). Plaintiff neither alleges *how* Abbott violated these regulations, nor cites state law imposing the same duties, *see, e.g.*, *Dunham v. Bos. Sci. Corp.*, 2026 WL 539533, at *7 (W.D. Mich. Feb. 24, 2026) (claims preempted where Plaintiff did not establish state law imposed regulatory obligations embodied in CGMPs). To escape preemption, Plaintiff must do more than "simply assume, without legal or other support, that [alleged] deficiencies amount to violation of the FDA's conditions for PMA." *Gravitt*, 2018 WL 2933609, at *6. He has not.

The Complaint also contains allegations that rest on inaccurate readings of federal regulations and therefore seek to impose state duties that diverge from the actual federal duty. For example, Plaintiff repeatedly alleges that Abbott violated 21 C.F.R. § 814.39(d) by failing to update warnings. *See, e.g.*, Compl. ¶¶ 84, 90, 117-18, 133. Courts have held that such claims are expressly preempted because § 814.39(d) *allows* but does not *require* enhanced warnings, and so requiring such warnings under state law would impose demands beyond federal ones. *McMullen*, 421 F.3d at 489; *Heisner v. Genzyme Corp.*, 2010 WL 894054, at *3 (N.D. Ill. Mar. 8, 2010). The same is true of Plaintiff's claims based on purported violations of 21 C.F.R. § 814.39(a) for not submitting a new PMA application. *See, e.g.*, Compl. ¶ 90. Section 814.39(a)—titled "PMA supplements"—contains *no* requirements for a new PMA. Quite the opposite. It states: "After

12

FDA's approval of a PMA, an applicant *shall* submit a PMA supplement" for changes affecting safety or effectiveness. 21 C.F.R. § 814.39(a) (emphasis added). To read state law as requiring a new PMA application when federal law does not would impose new requirements, and such a claim is preempted. *McMullen*, 421 F.3d at 489-90. But even if Plaintiff could identify actual, relevant federal requirements (and he has not), he still must identify state-law duties that parallel those requirements. Plaintiff has not done so because no such parallel state laws exist.

## II.     Plaintiff Has Not Pleaded Any Viable Claims—Parallel or Otherwise

Plaintiff's claims are expressly and impliedly preempted as set forth above. Separate and apart from preemption, however, Plaintiff's claims also fail to satisfy New York legal requirements and federal pleading standards under Rules 8 and 9 and *Twombly* and *Iqbal*.

### A.     New York Law, Not Illinois or Florida Law, Applies to These Claims

Illinois courts apply a "*strong* presumption" that "the law of the place of injury controls" in personal-injury cases. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 164, 166 (2007); *see also Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020) (forum state's choice-of-law rules apply in federal diversity action). In medical-device cases, that is the state of implantation—here, New York, Compl ¶ 8. *Krantz v. Abbott Labs.*, 2025 WL 2160718, at *2 (N.D. Ill. July 30, 2025). The location of alleged injury, location of alleged injury-causing conduct, and center of the parties' relationship is New York. Compl. ¶¶ 42-44. That Plaintiff received some medical care in Florida, Compl. ¶ 41, is insufficient to overcome this presumption. *See Forsythe v. Rosen Med. Grp.*, 2014 WL 13117499, at *2 (N.D. Ill. June 19, 2014) (applying law of state where surgery performed, not state of residence). And while Plaintiff invokes Illinois law "in the alternative" for certain claims, Compl. ¶ 11, Illinois (where Plaintiff incorrectly alleges the device was developed) does not have a stronger relationship with the occurrence than New York. *Krantz*, 2025 WL 2160718, at *2.

13

B.      **Plaintiff's Claims Fail on State-Law Grounds and Are Inadequately Pleaded**

*Strict Products Liability: Manufacturing Defect.*      To plead a manufacturing defect, Plaintiff must allege that "some mishap in the manufacturing process" caused his injury.  *See Goldin v. Smith & Nephew, Inc.*, 2013 WL 1759575, at *2 (S.D.N.Y. Apr. 24, 2013).  He does not. Plaintiff alleges that his device failed to conform with PMA standards and federal QSRs, Compl. ¶¶ 71-78, but he never identifies a defect, what went wrong in manufacturing, which specifications his particular device failed to meet, or how any defect caused his injuries.  Without these essential details, Plaintiff's allegations are mere "naked assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678.  *See, e.g.*, *Goldin*, 2013 WL 1759575, at *3 (dismissing claim that "failed to allege any facts regarding the manufacturing process").

Plaintiff's alleged injuries do not save his claim because he has not adequately alleged facts showing that there is "no other possible cause" for the device's failure.  *Id*.  The alleged injuries also cannot serve as circumstantial evidence to sustain this claim where, as here, they are among those the manufacturer warned of, *compare* Compl. ¶¶ 49, 68 ("pain in his chest," "numbness in his lower extremities," "electric shocks," and lack of "pain relief") *with* RJN, Ex. 3 at 6 (risk of "[s]timulation in unwanted places," including "the chest wall"; "numbness[] or pain below the level of implant"; "[u]npleasant sensations"; and "reduced pain relief"); *id.*, Ex. 4 at 20-21.  *See Green v. Covidien LP*, 2019 WL 4142480, at *4 (S.D.N.Y. Aug. 30, 2019).  Plaintiff's recall allegations do not change the analysis.  The September 2023 Urgent Medical Device Correction, Compl. ¶ 18, involved complaints from patients unable to exit MRI mode and had nothing to do with "electric shocks" or "sudden device shutdown."  *See* RJN, Ex. 11.  The second, in May 2024 and after Plaintiff's device was explanted, was a product labeling issue related to certain software warnings about battery life.  Compl. ¶ 19.  Both were voluntary, initiated by Abbott, and neither required the return of any devices.  Regardless, a recall "does not suffice to plausibly show that

14

the device itself was defective," particularly where—as here—Plaintiff never alleges that his device exhibited any of the recall-related issues or that any recall-related issue caused his injuries. *See Rodman v. Stryker Sales Corp.*, 2014 WL 5002095, at \*2 (S.D.N.Y. Oct. 7, 2014), *aff'd*, 604 F. App'x 81 (2d Cir. 2015); *see also Clark v. Medtronic, Inc.*, 572 F. Supp. 2d 1090, 1094-95 (D. Minn. 2008) (Class III devices are "complex device[s] which can fail for a variety of reasons" unrelated to manufacture); *Walker v. Medtronic, Inc.*, 670 F.3d 569, 580 (4th Cir. 2012) ("safety and reliability" of implanted device "cannot be guaranteed indefinitely in the extremely hostile environment of the human body"). In any event, preemption still applies because "evidence of a recall alone does not show that the defendant . . . violated any FDA regulations." *Scianneaux v. St. Jude Med. S.C., Inc.*, 961 F. Supp. 2d 808, 813 (E.D. La. 2013).

**Strict Products Liability: Failure to Warn.** Plaintiff alleges that Abbott failed to update its labeling and educational materials to disclose known risks (even as he criticizes Abbott for submitting too many PMA supplements, several of which related to labeling changes). Compl. ¶¶ 79-87. Again, Plaintiff does not allege Abbott violated parallel state and federal requirements because Plaintiff cites no federal regulations requiring the state-law duties he asserts. *See* 21 C.F.R. § 814.39(d) (permitting but not requiring label updates); 21 C.F.R. § 820.198 (requiring maintenance of complaint files and investigation of certain complaints); *Bass*, 669 F.3d at 515 (dismissing claim where plaintiff cited no federal regulation requiring the asserted warning). Plaintiff's allegations also fail because he never "plead[s] facts indicating how the provided warnings were inadequate." *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 575 (E.D.N.Y. 2012). His allegations that Abbott failed to warn of certain risks are insufficient without facts "identify[ing]" the actual "warnings given," as existing warnings may have addressed the alleged deficiency. *See Dunham v. Covidien, LP ("Dunham II")*, 498 F. Supp. 3d 549, 560 (S.D.N.Y. 2020) (dismissing

15

allegations that "[did] not identify how the warnings given were insufficient to warn physicians"); *see also Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 892 (E.D.N.Y. 2018) (claim dismissed where no facts "establishing how or why the warning provided was inadequate"). The causation allegations also fall short. "[B]eyond conclusory statements, [Plaintiff] does not allege adequately that [he] or [his] physicians would have chosen not to use the [SCS] device but for the allegedly inadequate warnings." *See Dunham II*, 498 F. Supp. 3d at 560; *see also Oden*, 330 F. Supp. 3d at 893 ("Plaintiff has pleaded no facts to suggest that his physician did not possess independent knowledge of the risks.").[7] Given that his physician was warned of "undesirable changes in stimulation," "pain," "lead migration," and "reduced pain relief," s*ee supra*, at 14 (RJN, Ex. 3), it is implausible additional warnings would have changed the decision to implant, *see* Compl. ¶ 83.

**Negligence Per Se: Federal Regulatory Violations.** Plaintiff's negligence-per-se theory rests entirely on allegations that Abbott violated federal regulations—but he does not support those allegations with a single fact. *See* Compl. ¶¶ 88-97. Even if he did, "in New York[,] the violation of a rule of an administrative agency . . . does not establish negligence as a matter of law." *Coene v. 3M Co. ex rel. Minnesota Min. & Mfg. Co.*, 2015 WL 5773578, at *4 (W.D.N.Y. Sept. 30, 2015). And Plaintiff cannot use this claim to create a private right of action to enforce FDCA regulations. *See In re GE/CBPS Data Breach Litig.*, 2021 WL 3406374, at *10 (S.D.N.Y. Aug. 4, 2021). Furthermore, New York does not recognize state-law duties paralleling the federal requirements he cites. *See, e.g.*, *English v. Bayer Corp.*, 468 F. Supp. 3d 573, 580 (W.D.N.Y. 2020) (collecting cases finding no parallel duty to report adverse events); *Tillet v. CooperSurgical, Inc.*, 2023 WL 4704091, *4 (W.D.N.Y. July 24, 2023) (similar).

**Breach of Express Warranty.** First, Plaintiff's general allegations that Abbott represented

---

[7] In fact, Plaintiff does not even allege he experienced "wireless charging" issues or "lead migration," so failure to warn of those symptoms could not proximately cause his injuries. *See* Compl. ¶¶ 49, 83.

16

its device was "safe, effective, reliable," and "adequately tested," Compl. ¶ 100, "fail[] to allege any specific words, promises or statements made by" Abbott, as required to plead an express-warranty claim. *See Fisher v. APP Pharms., LLC*, 783 F. Supp. 2d 424, 431-32 (S.D.N.Y. 2011). Second, the specific representations Plaintiff alleges Abbott made in its provider materials—that the device was "FDA-approved," "clinically validated," and "designed for long term use with low complication rates," Compl. ¶ 101—are (1) true, and (2) shared by virtually every medical device on the market, not statements with "a natural tendency to induce purchase." *Dunham II*, 498 F. Supp. 3d at 560-61. Regardless, "a successful breach of warranty claim requires that the product be defective," a showing Plaintiff fails to make. *Reed*, 839 F. Supp. 2d at 578; *supra*, at 14-15.

*Implied Warranty of Merchantability.* Plaintiff's implied-warranty claim fails for the same reason as his manufacturing-defect claim: he never plausibly alleges the SCS device was defective. Plaintiff alludes to "known defects in [the SCS device's] firmware execution, wireless programming, battery recharging, and therapy delivery," Compl. ¶ 111, but never alleges whether any of those purported defects were present in his device, let alone the basis for such an assertion. *See Goldin*, 2013 WL 1759575, at *4 ("the product poses a risk of harm because of its propensity to dislocate" insufficient). Plaintiff's alleged symptoms—chest pain, "shocks," "numbness," "therapy failure"—are not evidence of a defect; they are risks of which the FDA approved and Abbott expressly warned. *Dunham v. Covidien LP*, 2019 WL 2461806, at *5 (S.D.N.Y. May 22, 2019) (plaintiff experiencing "common consequences of hernia surgeries" did not show defect). Plaintiff's recall allegations add nothing. *Supra*, at 14-15.

*Negligence.* Plaintiff's negligence claim repackages his manufacturing- and labeling-defect allegations under a duty-of-care theory and fails for the same reason as his strict liability claims—namely, he has not pleaded a specific defect or identified actual warnings that harmed

17

him. *See supra*, at 14-16; *Dunham II*, 498 F. Supp. 3d at 560 (dismissing negligence claims where "strict products liability claims failed as inadequately pleaded"). His negligent-design allegations also fail because he does not "allege a feasible alternative design." *Kennedy v. Covidien, LP*, 2019 WL 1429979, at *3-4 (S.D.N.Y. Mar. 29, 2019) (dismissing claim because "safer alternative [] not pleaded in sufficient detail"). And he has not identified a state-law duty that mirrors the cited federal requirements. *Supra*, at 16; *English*, 468 F. Supp. 3d at 580. Furthermore, because Plaintiff's negligence claim would require Abbott to design, test, manufacture, and label its SCS devices differently from the manner approved by FDA, it is preempted. *Supra*, at 7-13.

*Negligent Misrepresentation.* Plaintiff alleges that Abbott negligently misrepresented the safety and efficacy of its system, as well as its FDA-approval status. Compl. ¶¶ 122-30. But he "fail[s] to identify" any specific misrepresentations or "provide any factual basis to conclude that those [representations] were false, misleading, or contained any material omissions"—each a fatal deficiency. *See Dunham II*, 498 F. Supp. 3d at 563.[8] That Plaintiff "suffered adverse consequences from the procedure" does not alone establish that he "reasonably relied on misrepresentations" by Abbott, and Plaintiff offers only conclusory statements as his other basis for reliance. *See Krulewich v. Covidien, LP*, 498 F. Supp. 3d 566, 581 (S.D.N.Y. 2020). Further, any alleged misrepresentations about future safety and efficacy are not actionable, *see Murray v. Xerox Corp.*, 811 F.2d 118, 123-24 (2d Cir. 1987) (rejecting future promises as basis for negligent misrepresentations), and the learned intermediary doctrine bars misrepresentations by omission *to Plaintiff*, *see Scism v. Ethicon, Inc.*, 2020 WL 1245349, at *6 (N.D.N.Y. Mar. 16, 2020).

*Fraudulent Concealment.* Plaintiff alleges that Abbott concealed the extent to which his device had changed from the predicate device, that the FDA approved the device based on

---

[8] Plaintiff's negligent-misrepresentation allegations "sound in fraud" and are thus subject to Rule 9(b)'s heightened standard. *Dunham II*, 498 F. Supp. 3d at 562-63.

similarity to legacy systems, and that the device had issues. Compl. ¶¶ 131-37. But these allegations fail under Rule 9(b) because he fails to specify "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud." *See Oden*, 330 F. Supp. 3d at 899. Moreover, as with his negligent misrepresentation claim, Plaintiff fails to plausibly allege the purported omissions caused his injury.[9] *See supra*, at 18.

*Violation of the New York Consumer Protection Act.* New York's Consumer Protection Act requires plaintiffs to "identify the specific acts or practices alleged to be misleading." *Glover v. Bob's Disc. Furniture, LLC*, 621 F. Supp. 3d 442, 453 (S.D.N.Y. 2022). Plaintiff "failed to identify even one false advertisement or misleading consumer-facing statement," and his claim therefore fails. *See Dupere v. Ethicon, Inc.*, 2022 WL 523604, at *8 (S.D.N.Y. Feb. 22, 2022).[10]

*Negligence Per Se: Unauthorized Practice of Medicine.* New York does not recognize negligence-per-se claims based on statutes that provide no private right of action, because permitting such claims "would be inconsistent with the legislative scheme." *In re GE/CBPS Data Breach Litig.*, 2021 WL 3406374, at *10. That is true here: New York's unauthorized-practice-of-medicine statute provides no private right of action, and Plaintiff cannot create one using a negligence-per-se theory. N.Y. Educ. Law § 6512.[11]

## CONCLUSION

For the foregoing reasons, Abbott respectfully requests that Plaintiff's Complaint be dismissed with prejudice.

---

[9] The learned intermediary doctrine bars allegations of failure to disclose facts *to Plaintiff*. *Supra*, at 18.

[10] Plaintiff's alternative claim under Illinois's act also fails because that act applies only to fraudulent transactions that primarily occurred in Illinois. *Landau v. CNA Fin. Corp.*, 381 Ill. App. 3d 61, 63 (2008).

[11] Illinois's unauthorized-practice-of-medicine statute does not apply to the actions taken in New York absent "express" direction from the Illinois legislature. *See Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017); 225 ILCS 60/3 et seq. (no express direction to apply outside Illinois).

DATED:  May 8, 2026

Respectfully submitted,

Brian O'Connor Watson
**Riley Safer Holmes & Cancila LLP**
1 S Dearborn St, Suite 2200
Chicago, Illinois 60603
Telephone:  (312) 471-8700
bwatson@rshc-law.com

/s/ Amy Laurendeau
Amy Laurendeau
**O'Melveny & Myers LLP**
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone:  (949) 823-6900
alaurendeau@omm.com

Leah Godesky (*pro hac vice*)
**O'Melveny & Myers LLP**
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone:  (310) 553-6700
lgodesky@omm.com

*Attorneys for Defendant Abbott Laboratories*

20

## **CERTIFICATE OF SERVICE**

I, Amy Laurendeau, an attorney, hereby certify that on May 8, 2026, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system, which will send notification of such filing to all attorneys of record.

Respectfully submitted,

/s/ Amy Laurendeau
Amy Laurendeau
**O'Melveny & Myers LLP**
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900
alaurendeau@omm.com

21